FILED IN MY OFFICE
DISTRICT COURT CLERK
4/18/2013 4:05:52 PM
STEPHEN T. PACHECO
ANO

IN THE FIRST JUDICIAL DISTRICT COURT
STATE OF NEW MEXICO
COUNTY OF SANTA FE

Cause No. D-101-CV-2013-01032

MARTIN LUJAN,

                Petitioner/Plaintiff,

vs.

CITY OF SANTA FE,

                Respondent,

vs.

CITY OF SANTA FE, and
ROBERT ROMERO, in his official and individual capacity,

                Defendants.

## FIRST AMENDED PETITION FOR WRIT OF CERTIORARI AND COMPLAINT FOR VIOLATION OF FIRST AMENDMENT RIGHTS, RETALITAORY DISCHARGE AND THE WHISTLE BLOWER ACT

**For the Petitioner/Plaintiff:**
Martin Lujan

Nathaniel V. Thompkins
**NEW MEXICO FIRM, LLC**
*Attorney for Petitioner Plaintiff*
103 St. Francis Drive, Suite A
Santa Fe, NM 87501
Ph. (505) 988-9750

**EXHIBIT A**

1 | Page

COMES NOW the Petitioner/Plaintiff, Martin Lujan, by and through his counsel of record, New Mexico Firm, LLC (Nathaniel V. Thompkins) and petitions the Court for a Writ of Certiorari to review the Decision of the Mediator, Paula G. Maynes, upholding the decision of the City of Santa Fe to terminate the employment of Petitioner/Plaintiff, which is attached hereto as Exhibit 1, and Petitioner/Plaintiff's Complaint for (1) Violation of his First Amendment Rights; (2) Retaliatory Discharge; and (3) violation of the Whistle Blower Act, in support thereof the Petitioner/Plaintiff states as follows:

I. **Jurisdictional Statement and Procedural History**

This Petition is brought pursuant to Article VI; § 130 of the New Mexico Constitution, which provides that this Court has "appellate jurisdiction over matters originating in inferior courts and tribunals in their respective districts" and pursuant to Rule 1-075 NMRA. The Mediator's decision upholding the City of Santa Fe's termination of Petitioner/Plaintiff is a "Final Order" issued on March 13th, 2013. Petitioner's counsel received the decision on March 13th, 2013, via e-mail from Ms. Maynes. [See, Exhibit A, attached hereto] This Petition is filed within 30 days of that service. There is no statutory right to appeal this matter.

Petitioner/Plaintiff, Martin Lujan ("Martin"), had been employed with the City of Santa Fe in various recreation positions for eighteen years and was never disciplined nor did he receive any negative employee appraisals and/or evaluations. At the time of his termination, Martin was the Municipal Recreation Center's ("MRC") Administrative Manager and Interim Division Director for the Recreation Division of the City of Santa Fe from October 19, 2010 through August 2012.

In 2011 the City of Santa Fe sponsored the Grand National Wrestling Tournament with the purchase of advertising and the donation of in-kind service contributions. The sponsorship

was coordinated by the Santa Fe Junior Wrestling Association's ("SFJWA") Treasure, Larry Lujan (hereinafter referred to as "Larry"). The City Manager, Robert Romero, a friend of the Lujan brothers and on behalf of the City, assigned the tasks, to Martin, Larry's brother. In 2011, at the time the City Manager assigned the task to Martin, the City Manager had personal knowledge that Martin's brother, Larry, was working for SFJWA. At the time Robert Romero gave Martin the project, the City had an "Anti-Fraud" Policy - Rule 6.3.4 City Fraud Prevention Policy number 2100-2-1. The Anti-Fraud Policy expressly prohibits the City Manager, Robert Romero, from giving to any employee a project that involves the employee conducting City business with a "family member".

Despite the Anti-Fraud Policy, the City Manager, with full knowledge that Martin is the brother of Larry, assigned the Grand National Wrestling Tournament ("Tournament") project to Martin. Robert Romero expressly authorized Martin to negotiate on behalf of the City with his brother Larry for the financial sponsorship of the Tournament and purchase of advertising in the Tournament bulletin. The action of the City Manager in 2011 was in direct violation of the City's Anti-Fraud policy. This violation was repeated again in 2012, when Larry approached the City of Santa Fe sponsors the subsequent 2012 Tournament.

In 2012, the Santa Fe Junior Wrestling Association sought sponsorship for the 2012 Tournament which was scheduled to be held in the City of Santa in June. In January 2012, Larry made the request via an e-mail to City Councilman, Carmichael Dominguez. Robert Romero, with full knowledge of the City's Anti-Fraud policy, assigned the project to Martin, to negotiate on behalf of the City with his brother, Larry. The assignment to Martin was done despite each brother voicing some concerns about the City's policy. Robert Romero, despite the City's Anti-Fraud policy, permitted the brothers to working together on the project.

After several exchanges in e-mails between the City and the Santa Fe Junior Wrestling Association between January and June, 2012 (the month of the Tournament), the City agreed to pay the Tournament's sponsorship fee of $5,000.00 and to purchase two (2) advertisements in the Tournament's bulletin for $1,000.00. The total sponsorship agreed upon by the City Manager was $6,000.00. Robert Romero then provided Martin with a line-item source of the $6,000 contribution in May, 2012. With Robert Romero's authorization, Martin had Larry sign a hand-written itemized statement agreeing to the City's payment of $6,000.00 which covered both the (1) Host Fee ($5,000) and (2) two advertisements which had a stated valued of, respectively, $900.00 and $750.00. In terms of the advertisements, the City agreed to pay $1,000.00 for $1,650.00 worth of advertising.

The Tournament was scheduled to being on June 6, 2012, and the City's Purchasing Officer issued a Purchase Order ("PO") for $6,000.00 that same day. However, after the Tournament ended, the City had not paid the PO and the SFJWA was forced to pay the Tournament sponsorship fee of $5,000.00. In addition, the City's did not pay for the advertising that it requested placement of in the Tournament's bulletin. In fact, the City's Purchasing Agent, *after the fact*, revoked the PO and agreement by the City to sponsor the event and purchase the agreed upon advertising. The City to date has never paid for the advertising nor has it reimbursed the Santa Fe Junior Wrestling Association for the $5,000 Tournament fee.

After the Tournament ended on June 9, 2012, Martin and Larry engaged in an exchange of e-mails between one another. Larry was pushing Martin for payment of the 2012 Tournament, which the City had agreed to pay and now, after the event, was refusing to pay. Larry, in one particular e-mail, referenced a sporting event in which there were airline tickets and other expenses which he claimed that Martin would get reimbursed. However, in response to

each e-mail, Martin consistently denied the allegations and referred Larry back to the signed agreement he (Larry) made with the City of Santa Fe for $6,000.00. In fact, the evidence showed that Martin never attended a sporting event and never purchased an airline ticket as alleged by his brother Larry in the e-mails. The City was not able to produce any evidence of any expenses that were paid by Martin for either an airline ticket or any other expenses. The only reference to an airline ticket involved Martin possibly attending an AAU event concerning a Golf Chairmanship and the AAU possibly reimbursing him for his travel. However, since the event never took place there were no expenses paid by Martin that could possibly be reimbursed out of City funds.

As noted in the Mediator's decision, the City never paid for the 2012 sponsorship and the SFJWA was never paid by the City for the 2011 or 2012 Tournaments. However, the decision erroneously alleges that Martin stole funds and/or attempted to obtain City Funds under false pretenses by authorizing the payment of two invoices. The Mediator's decision also erroneously found that Martin submitted a second invoice of $750.00 to pay for reimbursement of his personal expenses through the SFJWA.

The Mediator made findings of fact which were not alleged by the in its' Notice of Contemplated Action and Notice of Final Action, which formed the basis for the City's termination of Martin's employment. The findings included, "Careless, negligent or improper use of City funds" and "intentional falsification or mishandling of City records". Finally, the Mediator concluded that Martin's alleged actions "reflects poorly upon the integrity of the City of Santa Fe". Petitioner/Plaintiff submits that the Mediator's decision should be reversed for the reasons set forth in this Petition and which will further be demonstrated in the Statement of Issues Presented.

## II. REAL PARTIES IN INTEREST

The real parties in interest in the instant case are as follows:

1. Petitioner/Plaintiff, Martin Lujan; and

2. Respondent, City of Santa Fe.

## III. ARGUMENT

### A. Standard of Review.

Under Rule 75, the District Court may only reverse an agency decision if:

> (1) the agency acted fraudulently, arbitrarily or capriciously;
>
> (2) based upon the whole record on review, the decision of the agency is not supported by substantial evidence;
>
> (3) the action of the agency was outside the scope of authority of the agency; or
>
> (4) the action of the agency was otherwise not in accordance with law.

See, N.M.R.A. 1-075(Q)(1)-(4).

"When reviewing administrative agency decisions courts will begin by looking at two interconnected factors: *whether the decision presents a question of law, a question of fact, or some combination of the two; and whether the matter is within the agency's specialized field of expertise.*" *Regents of Univ. of New Mexico v. New Mexico Fed'n of Teachers*, 1998-NMSC-020, 125 N.M. 401, 407, 962 P.2d 1236, 1242 (1998)(Italics ours). An administrative agency decision is arbitrary and capricious if there is no rational connection between the facts found by the agency and its decision or the agency entirely omitted consideration of relevant factors. *Atlixco Coalition v. Maggiore*, 125 N.M. 786, 794, 965 P.2d 370, 378 (Ct. App. 1998) (citations omitted). "Normally an agency rule would be arbitrary or capricious if the agency ... *failed to consider an important aspect of the problem*, offered an explanation for its decision that *runs counter to the evidence before the agency*, or is so implausible that it could not be ascribed to a difference in view or the product of agency

expertise." These are the deficiencies for which court should not attempt to "supply a reasoned basis." *Rio Grande Chapter of Sierra Club v. New Mexico Mining Comm'n*, 2003-NMSC-005, 133 N.M. 97, 102, 61 P.3d 806, 811 (2002). The burden on review of an administrative decision under arbitrary and capricious standard is to show that the decision is "unreasonable or unlawful". *Id.*

"Substantial evidence is evidence that a reasonable mind would recognize as adequate to support the conclusions reached by a fact-finder." *N.M. Mining Assn. v. N.M. Water Quality Control Comm.*, 2007-NMCA-010, 141 N.M. 41, 51, 150 P.3d 991, 1001 (Ct. App. 2006) "In applying whole record review, this Court *reviews both favorable and unfavorable evidence* to determine whether there is evidence that a reasonable mind could accept as adequate to support the conclusions reached by the fact finder." *Wagner v. AGW Consultants*, 2005-NMSC-016, 137 N.M. 734, 754, 114 P.3d 1050, 1070 (2005) (Italics ours). "If the agency's factual findings are not supported by substantial evidence, *the court may adopt its own findings and conclusions* based upon the information in the agency's record." *Regents of Univ. of New Mexico v. New Mexico Fed'n of Teachers*, 1998-NMSC-020, 125 N.M. 401, 407, 962 P.2d 1236, 1242 (1998).

"A ruling that is not in accordance with law should be reversed 'if the agency unreasonably or unlawfully misinterprets or misapplies the law.'" See, *N.M. Mining Assn. v. N.M. Water Quality Control Comm.*, 2007-NMCA-010, 141 N.M. 41, 45, 150 P.3d 991, 995 (Ct. App. 2006) citing, *Archuleta v. Santa Fe Police Dep't*, 2005–NMSC–006, ¶ 18, 137 N.M. 161, 108 P.3d 1019. "[I]t is the function of the courts to interpret the law,' and courts are in no way bound by the agency's legal interpretation." The "...court may substitute its own interpretation for the applicable law for that of the Commission ...". *Rio Grande Chapter of Sierra Club*, supra, 133 N.M. at 102. The court "reviews *de novo* whether a ruling by an administrative agency is in accordance with the law. *Archuleta v. Santa Fe Police Dept. ex rel. City of Santa Fe*, 2005-NMSC-006, 137 N.M. 161, 168, 108 P.3d 1019, 1026 (2005). In doing so the court "...

may take into account the nature of the agency and the scope of its power to determine fundamental policy." *Id.* The court "... should reverse the ruling if the agency unreasonably or unlawfully misinterprets or misapplies the law...". *Id.* "[T]he court *may always substitute its interpretation of the law* for that of the agency's "because it is the function of the courts to interpret the law." *Regents of Univ. of New Mexico v. New Mexico Fed'n of Teachers,* 1998-NMSC-020, 125 N.M. 401, 407, 962 P.2d 1236, 1242 (1998).

### IV. <u>Showing that Petitioner is Entitled to Relief</u>

**Evidence Does Not Constitute Theft, Attempt or Carelessness
The Mediator's decision is not support by substantial evidence; and
The Mediator's decision is not in accordance with the law**

Petitioner/Plaintiff argues that there is no substantial evidence that Martin committed theft, attempted theft or was careless or negligent in the use of City funds as defined under the City's Personnel Rules and Regulations. The Mediator herself questioned her own finding on the issue of theft and stated that the evidence only demonstrated "statements showing an intent to steal". There's no substantial evidence that Martin was carless, negligent or improperly used City funds. In the Mediator's finding of fact she stated that "[a]t the time that it was held, the City had not yet paid any portion of its authorized sponsorship monies to Santa Fe Junior Wrestling." [See, Exhibit A, ¶ # 17] In fact, the testimony from the City Manager, Robert Romero, established that the City has never paid the SFJWA or any other entity that it agreed to pay under the PO it issued to the SFJWA.

The Mediator misinterpreted and/or misapplied the law or rules which govern Martin's alleged conduct. Rule 7.50(E)(2) which provides for the "carless, negligent, or improper use of City property, equipment, or funds. The Mediator unreasonably and/or unlawfully misinterpreted or misapplies the law or rule as it applied to the evidence. There's been no evidence that the City

paid any monies to the SFJWA or AAU. Therefore it is inconsistent as a matter of law for Martin to have been careless, negligent, or improper with City funds. Further, the e-mails upon which the Mediator relies do not demonstrate that Martin handled any City funds. The evidence fails to show that Martin actually incurred any personal expenses and/or purchased an airline ticket using City funds or received a reimbursement for any expenses.

### The City Of Santa Fe Acted Fraudulently, Arbitrarily and Capriciously

Martin was a friend of the City Manager, Robert Romero, up and until he (Martin) investigated concerns about the Robert Romero's girl-friend violating the "time clock" policies. After Martin instituted measures to control the abuses that were being carried out regarding employees clocking in for other employees, Robert Romero's girlfriend sought exemption from clocking in and was granted permission by subordinates and cronies of Robert Romero. When Robert Romero became aware that Martin was investigating the legal requirements concerning the exemption of Robert Romero's girlfriend from the time clock policy and the nepotism of Robert Romero to a relative of his girlfriend, Robert Romero retaliated against Martin and violated his First Amendment Rights to Free Speech and Liberty, Violated the City's Anti-Fraud Policy, and retaliated against Martin for being a Whistle Blower.

### V.     Statement Of The Relief Sought

Petitioner/Plaintiff respectfully requests that the Court issue a writ of certiorari, pursuant to the New Mexico Constitution, and reverse the Order upholding the City's termination of Martin's employment. Martin seeks reinstatement of his employment with the City, back pay, front pay and such other and further relief the Court deems just and proper.

# COMPLAINT FOR VIOLATION OF RIGHTS PROTECTED UNDER THE FIRST AMENDMENT, RETALITAORY DISCHARGE, and THE WHISTLE BLOWER ACT

MARTIN LUJAN,

   Plaintiff,

vs.

CITY OF SANTA FE and
ROBERT ROMERO, in his official and individual capacity,

   Defendant.

## COMPLAINT

NOW COMES the Plaintiff, Martin Lujan, by and through his attorneys, the New Mexico Firm, LLC, [Nathaniel V. Thompkins] and for his Complaint states as follows:

### I. THE PARTIES and JURISDICTION

1. Plaintiff, MARTIN LUJAN ("Martin"), is an individual and has resided in the County of Santa Fe, State of New Mexico for over 25 years and at all relevant times to this Complaint.

2. All the facts and circumstances set forth in Martin's Complaint occurred within the City of Santa Fe, County of Santa Fe, State of New Mexico.

3. Defendant, CITY OF SANTA FE [hereinafter "City"] is a Commission-Manager form of government operating pursuant to the State of New Mexico's statutes, NMSA 1978, § 3-14-4.

4. Defendant, Robert Romero [hereinafter "Romero"], is the City Manager for the City of Santa Fe, County of Santa Fe, State of New Mexico.

## COUNT I

## VIOLATION OF FIRST AMENDMENT TO THE U.S. CONSTITUTION

1. Martin incorporates by reference the above-referenced paragraphs set forth in the Petition for a writ of certiorari, inclusive of this Complaint, as if fully set forth.

2. In the latter part of 2011, Martin, was employed by the City of Santa Fe as the Municipal Recreation Center's ("MRC") Administrative Manager and Interim Division Director for the Recreation Division.

3. Martin in 2011 exercised his rights pursuant to the City's Personnel Rules/Regulations and Policies and became involved in the political campaign of City Councilman, Chris Rivera.

4. Under the City's Personnel Rules/Regulations and Policies, employees are permitted to "1. ... express their opinions on all political subjects and candidates; 3. ... Attend political rallies; and 4. ... *Engage in political activity on their own time* including signing nominating petitions and making voluntary contributions to political organizations."

5. The City's Manager, Romero, was affiliated with Councilman Rivera's opponent in the election, Gilbert Martinez as Romero had given Martinez a job.

6. In early 2012, Romero approached Martin and advised him that he (Romero) was concerned about Martin's involvement in Councilman Rivera's campaign. Romero told Martin that he (Martin) was in a high City position and should not be engaged in political activities.

7. Martin, rather than risk his employment, immediately stopped his support of Councilman Rivera.

8. Soon after Romero's warning to Martin, City Councilman Dominguez discussed the issue with Romero and expressed his concerns about violating Martin's free speech rights

and the City's Rules and Regulations pertaining to political activity by employees. Romero advised Councilman Dominguez that he (Romero) was going to demote Martin for being involved in Councilman Rivera's campaign.

9. Martin had a protected property interest in his employment with the City of Santa Fe. In addition, Martin had due process rights which he was deprived of by the City and Romero.

10. The City and Romero's actions have had an unlawful chilling effect on Martin's free speech rights and other rights to free speech secured by the First Amendment to the United States Constitution. Said actions were also a violation of the City's Personnel Rules/Regulations and Policies.

11. The City and Robert Romero violated Martin's liberty interest and Free Speech rights which constitutes irreparable harm. *Elrod v. Burns*, 427 U.S. 347 (1976).

12. Romero unlawfully retaliated against Martin for exercising his right to free speech secured by the First Amendment to the United States Constitution.

13. The City and Romero's actions were malicious, wanton, willful, reckless, and in knowing violation of Martin's constitutional rights under the First Amendment.

14. The City and Romero's unlawful actions caused Martin harm and he is entitled to compensatory and punitive damages.

## COUNT II

### RETALITORY DISCHARGE

15. Plaintiff incorporates by reference the above-referenced paragraphs 1 through 14 as set forth above, inclusive of this Complaint, as if fully set forth.

16. Martin's supervisory duties included his being the ultimate supervisor for Romero's girlfriend, another City employee, and the girlfriend's relative, also a City employee.

17. When Martin exercised his duties as the ultimate supervisor over Romero's girlfriend, Robert's girlfriend sent and e-mail stating that she was exempt from the time clock policy despite the fact that all other City employees were required to clock-in and clock-out and account for the time.

18. Romero retaliated against Martin for Martin's addressing a matter of public concern and involving citizen tax dollars and the City's funds.

19. A casual connection exists between Martin's engagement in protected activity and the adverse employment action complained of in this complaint.

20. Martin, in connection with the girlfriend's relative, raised the issue of nepotism with Romero. However, rather than address the issue, which involved the hiring and promoting of the relative contrary to City policies and procedures, Romero retaliated against Martin.

21. Despite a memorandum issued by the City and the City's polices and rules against employees supervising relatives, Romero's girlfriend became the immediate supervisor of her cousin.

22. For raising issues of public concern, Robert retaliated against Martin and was ultimately discharge for raising issues of public concern.

23. Romero had no legitimate business reasons for having taken adverse employment actions against Martin.

24. Any alleged legitimate, non-discriminatory business reasons which Romero may put forth are merely pretext for his retaliatory acts.

## COUNT III

## VIOLATION OF THE WHISTLEBLOWR PROTECTION ACT

25.   Martin incorporates by reference the above-referenced paragraphs 1 through 24, inclusive of this Complaint, as if fully set forth.

26.   At the time of his termination, Martin was the Municipal Recreation Center's ("MRC") Administrative Manager and Interim Division Director for the Recreation Division of the City of Santa Fe was responsible for running the various recreational facilities and programs for the City. This included knowledge and understanding about the benefits and tax consequences for the offering the free use of City owned recreational facilities as benefits to employees and their dependents under the "Wellness Program". Martin was responsible for running the Genoveva Chavez Community Center ("GC3") which would feel the fiscal impact of the Wellness Program if employee dependents were given free use of the facilities.

27.   When Martin was questioned about the fiscal impact of the Wellness Program by a Union representative, he stated the City's history with GC3's enterprise status and the past IRS audits and findings.

28.   Upon learning of Martin's statements regarding his concerns for the Wellness Program, Robert Romero confronted Martin and stated, "I understand that you're not supporting the Wellness Program".

29.   On May 21, 2012 a memorandum was created for the City's Finance Committee in which one of the items was the "Wellness Program". The program's description only included "employees". The Finance committee voted on and approved the Wellness Program for employees only. The Finance Committee the forwarded the matter to the City Council for a vote.

30. During the Finance Committee meeting, Ike Pino, Martin's boss, e-mailed Martin instructing him "not to editorialize" his concerns or "make a tar baby out of his concerns" about the Wellness Program. As a result of the program being passed by the Finance Committee Martin and another City Employee, Ivy Vigil, were instructed to roll out the Wellness Program. However, when Martin requested a copy of the Wellness Program from Sue Perry, she responded that she was instructed to only give copies to the Mayor, Romero and Ike Pino.

31. On May 24, 2012, a second Memorandum was created for the "Governing Body" or City Counsel, in which the Wellness Program was on the agenda for a vote. However, the description of the Wellness Program was changed and now included "... and their family members who are covered dependents on the employee's City of Santa Fe health insurance plan ...". This addition was not a part of the memorandum submitted and approved by the Finance Committee.

32. City Councilman Dominguez, prior to the City Council meeting, called Martin regarding the Wellness Program. Martin informed Councilman Dominguez of his concerns regarding the IRS and G3C enterprise concerns.

33. At the City Council meeting Robert Romero was questioned about the switching of the memorandum and the IRS and G3C enterprise issues. As a result the measure was not passed and Robert Romero was embarrassed. Robert Romero latter confronted Martin and stated, "you f**ked me on the Wellness Program issues, didn't you."

34. Subsequently Martin's employment was terminated for allegedly conspiring to steal City funds, which was subsequently changed to, conspiring to attempt to steal City funds.

35. Upon information and belief, the City's changing of the memorandum concerning the Wellness Program violated the City's Personnel Rules/Regulations and Policies

to wit Martin blew the whistle when Councilman Dominguez asked Martin about the matter. Martin reasonably and in good faith believed the actions concerning the Wellness Program and the changing of the Memorandum constituted unlawful and/or improper acts; and in communicating his concerns to Councilman Dominguez, he reasonably and in good faith believed that the inclusion of the employee's families and dependents was a matter of public concern and was in violation of the law.

36. The City and Romero qualify as "public employer" under the New Mexico Whistleblower Act ("WPA"), N.M.S.A. 1978, § 10-16C-2(1) and (4).

37. Martin qualifies as a "public employee" under the WPA, N.M.S.A. 1978, § 10-16C-2(B).

38. Martin's internal complaints and communications to Councilman Dominguez and others about violations of New Mexico law, malfeasance, waste and abuse of authority constituted good faith disclosures of unlawful or improper acts by Romero within the meaning of the WPA.

39. Martin's communications and concerns about the switching of the memoranda and Wellness Program, constituted good faith disclosures of unlawful or improper acts by Romero and other unidentified City employees within the meaning of the WPA.

40. Upon information and belief, Romero, retaliated against Martin's protected activities under the WPA.

41. By doing so, Romero violated the WPA.

42. As a result of Romero's violations of the WPA, Martin has suffered actual damages in the form of lost past wages and future wages, and special damages.

43.     Martin, therefore, is entitled to actual damages, reinstatement with the same seniority status that he would have had but for the violation, two times the amount of back pay with interest, special damages, litigation costs and reasonable attorney's fees pursuant to the WPA, N.M.S.A. 1978, § 10-16C-4(A).

## DAMAGES

WHEREFORE, Martin respectfully requests this Court grant him judgment in his favor, including:

1. Two times the amount of past lost wages and benefits with interest;

2. Future lost wages and benefits;

3. Mental, emotional, and psychological distress;

4. Special Damages;

5. Pre-judgment and post-judgment interest;

6. Punitive or exemplary damages under FATA, N.M.S.A. 1978, § 44-9-11 (C) or any other rule or statute; and

7. Award of attorney fees and costs allowable under statute and rule.

Respectfully submitted:

**NEW MEXICO FIRM, LLC**

By:   /s/Nathaniel V. Thompkins
     Nathaniel V. Thompkins
     *Attorney for Petitioner Plaintiff*
     103 St. Francis Drive, Unit A
     Santa Fe, NM 87501
     Telephone: (505) 988-9750