IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARTIN LUJAN,

      Plaintiff,

vs.                                                                                  No. 13-cv-0438 JB/SMV

CITY OF SANTA FE and
ROBERT ROMERO,

      Defendants.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment on the Basis of Qualified Immunity ("Motion") [Doc. 98], filed June 22, 2016.  Plaintiff did not respond, and the time for doing so has passed.  The Honorable James O. Browning, United States District Judge, referred this matter to me for analysis and recommendation of an ultimate disposition.  [Doc. 96].  I have concluded that a hearing would not aid in my analysis of the Motion.  Having considered Defendants' Motion, the record, the relevant law, and being otherwise fully advised in the premises, I respectfully recommend that Defendants' Motion [Doc. 98] be granted, and that this case be dismissed with prejudice.

### Background

This case began over three years ago. *See* Notice of Removal [Doc. 1] (filed May 9, 2013).[1]  It started as a dispute over Plaintiff's termination from his position with Defendant City

---

[1] Many of the earlier proceedings in this case are not relevant to the Court's consideration of Defendants' Motion for Summary Judgment.  This Background section is not intended to be an exhaustive history of the case.

of Santa Fe ("City").  Amended Complaint[2] [Doc. 39] at 2–9.  Plaintiff was fired from his position as the Municipal Recreation Center's Administrative Manager and Interim Division Director for attempting to obtain City funds under false pretenses. [Doc. 39] at 2; [Doc. 62] at 2. Plaintiff asked the Court to reverse his termination and reinstate his employment with Defendant City.  [Doc. 39] at 9.  He also alleged violations of the First Amendment and New Mexico Whistleblower Protection Act, as well as retaliatory discharge.  *Id*. at 10–18.

On February 24, 2015, Judge Browning issued a Memorandum Opinion and Order in which he found that Defendant City had just cause to fire Plaintiff for attempting to steal municipal funds. [Doc. 62] at 82.[3]  After Judge Browning denied Plaintiff's Motion for Reconsideration, [Doc. 80], Plaintiff filed his Third Amended Complaint, [Doc. 88], on October 19, 2015.[4]

Plaintiff does not allege that the events described in the Third Amended Complaint are connected to his termination, which was initiated in July 2012.  *See* [Doc. 62] at 30 ("[Plaintiff] received a Notice of Proposed Disciplinary Action – Termination of Employment, dated July 30, 2012.").  That is, the Third Amended Complaint does not accuse Defendants of wrongdoing with regard to Plaintiff's firing. Instead, it focuses on events that occurred prior to his termination, between the "latter part of 2011" and "early 2012."  *Id*. at 3.

---

[2] Plaintiff amended his Complaint to add "new facts about the Defendants' conduct.  *See* Unopposed Motion to Amend or Supplement Complaint [Doc 25] at 1.  He did not include any new counts.  *Compare* [Doc. 1-2] *with* [Doc. 39].

[3] Judge Browning later issued an Amended Memorandum Opinion and Order.  [Doc. 79].  The Amended Order was intended only to fix errors in the original that occurred as a result of a technical glitch.  The substance of the Order did not change.  *Id*. at 1 n.1.

[4] The Court granted Plaintiff's attorney's motion to withdraw on December 18, 2015.  [Doc. 92].  Plaintiff currently proceeds pro se in this matter.  As Defendants point out, however, "at the time Plaintiff's Third Amended Complaint was drafted and filed, he was represented by counsel."  [Doc. 98] at 3 n.3.

Plaintiff's Third Amended Complaint raises several claims under 42 U.S.C. § 1983. First, he alleges that Defendant Romero violated his First Amendment rights by retaliating against him for his affiliation with a particular political campaign. Second, he alleges that Defendant Romero violated his "Fourth Amendment liberty interest" in his "position with the City of Santa Fe." *Id.* at 1, 4. Third, he alleges that Defendant Romero promulgated and enforced policies that resulted in the violation of Plaintiff's constitutional rights. *Id.* at 2. Finally, he alleges that Defendant City "had a custom, policy, or official act which caused a violation of [Plaintiff's] constitutional rights." *Id.*

Defendants filed their Answer to the Third Amended Complaint on November 2, 2015. [Doc. 89]. Defendants filed the instant Motion for Summary Judgment based on Qualified Immunity on June 22, 2016. [Doc. 98]. Plaintiff did not respond, and the time for doing so has passed.[5]

### Summary Judgment Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

---

[5] Under the Court's local rules, "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." D.N.M.LR-Civ. 7.1(b). This command does not apply to motions for summary judgment, *see Gamez v. Country Cottage Care & Rehab.*, 377 F. Supp. 2d 1103, 1115 (D.N.M. 2005) (Browning, J.), because these motions require the moving party to meet an initial burden. For motions for summary judgment, "[b]efore the burden shifts to the nonmoving party to demonstrate a genuine issue, the moving party must meet its 'initial responsibility' of demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law." *Murray v. City of Tahlequah*, 312 F.3d 1196, 1200 (10th Cir. 2002). Thus, the Court must consider Defendants' Motion on its merits.

The party seeking summary judgment bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted).  Once the movant meets this burden, Rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  In considering a motion for summary judgment, the Court's "role is simply to determine whether the evidence proffered by plaintiff would be sufficient, if believed by the ultimate factfinder, to sustain [his] claim." *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1195 (10th Cir. 2002).

Although Defendants styled their motion for summary judgment in terms of qualified immunity, the Court will apply the traditional summary judgment standard. *See Peterson v. Farnsworth*, 371 F.3d 1219, 1224 (10th Cir. 2004) (declining to consider defendants' entitlement to qualified immunity where no constitutional violation occurred); *Maestas v. Segura*, 416 F.3d 1182, 1188 n.2 (10th Cir. 2005) (applying traditional summary judgment standard even though defendants couched their motion for summary judgment in terms of qualified immunity).

### Analysis

As a preliminary matter, the Court must address the confusing way in which the Third Amended Complaint is organized.  The complaint [Doc. 88] comprises two counts.  The first is entitled, "Violation of Right to Free Speech and Liberty Interest." *Id*. at 3.  The second is labelled, "Violation of 42 U.S.C § 1983." *Id*. at 4.  However, § 1983 "[does] not create any substantive rights, but merely enforces existing constitutional and federal statutory rights." *Nelson v. Geringer,* 295 F.3d 1082, 1097 (10th Cir. 2002).  To state a claim upon which relief

can be granted under § 1983 a plaintiff must allege: (1) a deprivation of a federal right, and (2) that the person who deprived the plaintiff of that right acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Thus, the Court will consider whether Defendant Romero, acting under color of state law, violated Plaintiff's First Amendment rights and/or his " Fourth Amendment liberty interest" in his position with Defendant City. It will also consider Plaintiff's allegations that Defendant Romero is liable for promulgating and enforcing policies that led to the violation of Plaintiff's constitutional rights, as well as Plaintiff's allegation that Defendant City is liable for having policies and procedures that led to the violation of his rights. [Doc. 88] at 2.

### 1. First Amendment Retaliation Claim

<u>Plaintiff's First Amendment claim is properly considered as<br>a claim for retaliation for political affiliation.</u>

The test applied to determine whether an employer has retaliated against an employee in violation of the First Amendment differs based on the nature of the reason for the retaliation the employee alleges. *See Jantzen v. Hawkins*, 188 F.3d 1247, 1251 (10th Cir. 1999) (noting that there are two separate tests for First Amendment retaliation for free speech and for political affiliation). Plaintiff asserts that Defendants violated his "right to free speech." [Doc. 88] at 4. However, in support of this assertion, Plaintiff alleges that Romero retaliated against him because Plaintiff did not support the same City Council candidate as Romero, not because of any speech by Plaintiff. *See id*. at 3 (noting that Plaintiff was supporting Chris Rivera in the City Council race, while Romero was supporting Gilbert Martinez). Thus, the Court will consider whether Romero retaliated against Plaintiff for his political affiliation.

"With a few exceptions, the Constitution prohibits a government employer from discharging or demoting an employee because the employee supports a particular political candidate." *Heffernan v. City of Paterson*, 136 S. Ct. 1412, 1417 (2016).  It "prevents the government, except in the most compelling circumstances, from wielding its power to interfere with its employees' freedom to believe and associate, or to not believe and not associate." *Gann v. Cline*, 519 F.3d 1090, 1093–94 (10th Cir. 2008) (emphasis omitted) (quoting *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 76 (1990)).  To defeat summary judgment on a claim of retaliation for political affiliation, the employee must establish that there is a genuine dispute of material fact as to whether (1) his political association and/or beliefs were "substantial" or "motivating" factors behind the employer's adverse employment action, and (2) that the employee's position did not require political allegiance. *Jantzen*, 188 F.3d at 1251.

Embedded in this test is a requirement that the employer's act amounts to an "adverse employment action." *Id*.  This requirement is not often in dispute because the employee usually has been fired or demoted.  In those cases, the court need not discuss whether the employee has suffered an adverse employment action.  *See, e.g., Gann*, 519 F.3d 1091–92 (employee terminated after she did not campaign for county official who ultimately won election); *Walton v. Powell*, 821 F.3d 1204, 1214 (10th Cir. 2016) (employee fired because of her association with land commissioner's political opponent). Termination and demotion are clearly adverse employment actions.

As to something less than a demotion, the Tenth Circuit has "never established a general rule for determining what adverse employment actions may suffice" in the context of First Amendment retaliation cases.  *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192,

1207 (10th Cir. 2007). However, the court has provided guidance as to how severe the employer's action must be in order to be considered an adverse employment action in the context of a First Amendment claim.[6] The Tenth Circuit has "repeatedly stated that some forms of retaliation may be actionable under the First Amendment [even though they would be] insufficient to support a discrimination claim under Title VII." *Maestas*, 416 F.3d at 1188 n.5. It has also "implied that 'substantial harassment and abuse' could be a sufficient adverse employment action for First Amendment purposes [and has] held that First Amendment retaliation claims can be based on removing job duties from an employee's portfolio or giving an employee a written reprimand or a poor performance rating." *Brammer-Hoelter*, 492 F.3d at 1208 (internal citations omitted). However, it has "never held that employment action which may tend to chill free speech is necessarily adverse." *Maestas*, 416 F.3d at 1188 n.5 (citing *Baca v. Sklar*, 398 F.3d 1201, 1220 (10th Cir. 2005)).

Defendant Romero's alleged adverse employment actions

Plaintiff alleges that Defendant Romero took three actions in retaliation for his participation in Councilman Rivera's political campaign. First, Plaintiff alleges that Defendant Romero told Plaintiff "he was going to have to demote [him] or ask [him] to step down" because of his work on the campaign. [Doc. 98-1] at 3. Romero also allegedly told another city councilman that he was going to demote Plaintiff because of his involvement with the campaign. [Doc. 88] at 4. Plaintiff does not allege that he actually was demoted because of his involvement in the campaign, only that Romero warned that he would do so.

---

[6] Some of these explanations of what constitutes an adverse employment action come from cases concerning retaliation for free speech. However, the tests for both free-speech and political-association retaliation require the employee to demonstrate that his employer's acts amount to an adverse employment action. *See Jantzen*, 188 F.3d at 1251 (comparing tests for free-speech and political-association retaliation). The Court has not found any authority suggesting that what constitutes an adverse employment action differs between the two types of cases.

Second, Plaintiff alleges that Romero "investigated" him.  [Doc. 88] at 4; [Doc. 98-1] at 5.  Plaintiff provides no details about the nature, extent, or purpose of this investigation.

Third, Plaintiff alleges that Romero "prevented [Plaintiff] from having the authority to supervisor [sic] the departments and personnel that were under his direction."  [Doc. 88] at 4; *see also id*. at 6 ("Plaintiff became the focus of Defendant Romero's attention where he then . . . targeted [P]laintiff by intentionally preventing [P]laintiff from doing his job.").  Plaintiff recalls two specific instances where Romero questioned his decisions.   One concerned the "development of a division wide shift bib [sic] proposal"; the other related to the "installation of cameras over the time clock area."  [Doc. 98-1] at 5.

<u>Two of Defendant Romero's actions do not constitute adverse employment actions, and Plaintiff does not allege that his political affiliation was a "substantial" or "motivating" factor behind the third action.</u>

After considering the facts in the light most favorable to Plaintiff, the Court concludes that no reasonable jury could conclude that Romero's statement to Plaintiff and to a third party that he planned to demote Plaintiff and/or Romero's "investigation" of Plaintiff amounted to adverse employment actions severe enough to violate the First Amendment.  *Cf. Baca*, 398 F.3d at 1221 (finding that the defendants' removal of the plaintiff's supervisory duties, encouragement of other employees to bypass the plaintiff and report directly to the plaintiff's boss, reprimand of the plaintiff in violation of the employer's protocol, and filing a charge with the Office of Employment Opportunity, and then using that charge to demand that the plaintiff resign could constitute adverse employment actions).  Viewed in light of the guideposts set out by the Tenth Circuit, these acts simply do not amount to adverse employment actions, even in the more-relaxed First Amendment context.

As to the third alleged action—that Romero prevented Plaintiff from supervising his employees and "doing his job"—Plaintiff's own statements show that his political affiliation was *not* a "substantial" or "motivating" factor behind this action, as required for a claim of First Amendment retaliation. Plaintiff describes two instances in which Romero prevented him from supervising his employees and/or doing his job. [Doc. 98-1] at 5. However, Plaintiff explicitly links both of these instances to Romero's favoritism of his girlfriend, who worked in the same office as Plaintiff, not on retaliation for Plaintiff's political affiliation. *See id.* In other words, Plaintiff believes that Romero's decision to prevent him from supervising his employees and doing his job was unrelated to Plaintiff's First Amendment activity. No reasonable jury could find that Plaintiff's political affiliation was a substantial or motivating factor for this third action.

Plaintiff has failed to allege any action by Romero that (1) could constitute an adverse employment action as defined by the Tenth Circuit, and (2) was motivated by his political affiliation. Because no reasonable jury could find that Romero's actions violated the First Amendment, he is entitled to summary judgment.[7]

### 2. "Fourth Amendment Liberty Interest"

Plaintiff alleges that "Defendants, acting in concert, violated his . . . Fourth Amendment Liberty Interests." [Doc. 88] at 1. He alleges that he had a "liberty interest in his position with

---

[7] Defendants also argue that Romero is entitled to summary judgment because "Defendants would have terminated Plaintiff's employment based on his attempted theft of City funds even in the absence of his alleged protected conduct." [Doc. 98] at 15; s*ee also Walton v. Powell*, 821 F.3d 1204, 1211 (10th Cir. 2016) ("If a plaintiff succeeds [in proving that her political affiliation was a 'substantial' or 'motivating' factor behind the adverse employment action] . . . the defendant-employer may yet prevail by way of affirmative defense if it can prove by a preponderance of the evidence that it 'would have reached the same' adverse employment decision 'even in the absence of the protected conduct.'"). Defendant's argument would make sense if Plaintiff had claimed that he was terminated because of his First Amendment activity. However, Plaintiff does not allege that he was terminated because of his political association. He alleges that three other actions (Romero's statement that he was going to demote Plaintiff, Romero's investigation of Plaintiff, and Romero preventing Plaintiff from supervising his employees/doing his job) were the result of his First Amendment activity.

[Defendant City]."  *Id.* at 4.  The Court can find no authority for the proposition that the Fourth Amendment provides any protection of this nature.  To the extent that Plaintiff actually intended to assert that the Fourth Amendment protects a liberty interest in his job, the claim fails.

However, it is possible that Plaintiff meant to assert that he had a *property* interest (as opposed to liberty interest) in his job with the City.  The Court will assume *arguendo* that Plaintiff had a property interest in his job.  *See Pike v. Gallagher*, 829 F. Supp. 1254, 1270 (D.N.M. 1993) (Because "[p]laintiff could have only been discharged for 'just cause' . . .  she had a property right in her continued employment." (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985)).  When an employee has a property interest in his job, procedural due process requires "some kind of a hearing" prior to termination.  *Loudermill*, 470 U.S. at 542.  It appears that Plaintiff was afforded a pre-termination hearing, [Doc. 62] at 29, as well as a multi-day post-termination hearing, *id.* at 30.  Judge Browning also determined, de novo, that Defendant City had just cause to fire Plaintiff.  *Id.* at 77 n.12.  Because Plaintiff has undeniably received procedural due process, to the extent he intended to state a claim for deprivation of a property interest in his job, the claim fails.

It seems more likely, however, that Plaintiff intended to assert a violation of his *Fourteenth* Amendment liberty interest.  Defendants interpreted his Third Amended Complaint this way, *see* [Doc. 98] at 17–19, and Plaintiff has never responded to correct them. The Tenth Circuit delineated a four-part test that a plaintiff must satisfy to demonstrate a deprivation of his liberty interest:

> [A plaintiff] does have a liberty interest in his good name and reputation as it affects his protected property interest in continued employment. However, [a plaintiff] must show how the government infringed upon this liberty interest.  First, to be

> actionable, the statements must impugn the good name, reputation, honor, or integrity of the employee.  Second, the statements must be false.  Third, the statements must occur in the course of terminating the employee or must foreclose other employment opportunities.  And fourth, the statements must be published.

*Workman v. Jordan*, 32 F.3d 475, 480–81 (10th Cir. 1994) (internal citations omitted).

Plaintiff bases his claim on two statements allegedly made by Romero.  He alleges that Romero told a councilman that Romero "was going to demote [him] for being involved in Councilman Rivera's campaign."  [Doc. 88] at 4.  He also alleges that Romero "had a discussion with [the mayor] about Plaintiff's involvement [with the political campaign]."  *Id.* at 3.  As to the first prong of the test, no reasonable jury could find that these statements "[impugned] the good name, reputation, honor, or integrity" of Plaintiff.  *Workman*, 32 F.3d at 480–81; *cf. Melton v. City of Okla.*, 928 F.2d 920, 927 n.11 (10th Cir. 1991) (statements that "involve[] dishonesty, serious felony, manifest racism, serious mental illness, or the like" would qualify); *Sipes v. United States*, 744 F.2d 1418, 1422 (10th Cir. 1984) (rejecting a liberty interest claim because the "plaintiff was discharged for being tardy, failing to schedule leave . . . , and for engaging in 'horseplay.' These reasons, even assuming they were made public by the Government, do not call into question plaintiff's good name, reputation, honor and integrity.").

Plaintiff's claim regarding his liberty interest fails on the first prong alone.  *See Melton*, 928 F.2d at 926–27 (holding that elements are not disjunctive but must all be satisfied).  It could also fail, however, because Plaintiff does not allege that Romero's statements "[occurred] in the course of terminating the employee or . . . [foreclosed] other employment opportunities," nor does he allege that the statements were made public.  *Workman*, 32 F.3d at 480–81.  In any case, it fails.  No reasonable jury could find that Plaintiff's liberty interest was violated.

### 3.   Municipal Liability of Defendant City of Santa Fe

Plaintiff alleges that Defendant City had a custom, policy, or procedure that caused a violation of Plaintiff's constitutional rights.  [Doc. 88] at 2. However, "a municipality may not be held liable for constitutional violations when there was no underlying constitutional violation by any of its officers." *Hinton v. City of Elwood, Kan.,* 997 F.2d 774, 782 (10th Cir. 1993). "[A]bsent an underlying violation, [Plaintiff's] § 1983 claim for municipal liability [is] moot." *Crowe v. Clark*, 552 F. App'x 796, 799 (10th Cir. 2014).  Defendant City is entitled to summary judgment on Plaintiff's municipal liability claim.

### 4.   Supervisory Liability of Defendant Romero

Plaintiff alleges that Defendant Romero "promulgated and enforced [City] policies that violated [Plaintiff's] constitutional rights."  [Doc. 88] at 2.  It is true that in a § 1983  lawsuit, "[s]upervisory liability 'allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, [or] implements . . . a policy . . . which subjects, or causes to be subjected that plaintiff to the deprivation of any rights . . . secured by the Constitution.'"  *Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015) (quoting *Brown v. Montoya,* 662 F.3d 1152, 1163–64 (10th Cir. 2011)). But since there was no underlying constitutional violation by Romero as an individual, there can be no liability for Romero as a supervisor. Defendant Romero is entitled to summary judgment on Plaintiff's supervisory liability claim.

### Conclusion and Recommended Disposition

For the reasons set for herein, I respectfully recommend that Defendants' Motion for Summary Judgment [Doc. 98] be **GRANTED**, and that this matter be **DISMISSED WITH PREJUDICE**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**